# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

SENTIUS INTERNATIONAL, LLC,

        Plaintiff,

   v.

LG ELECTRONICS U.S.A. and
LG ELECTRONICS INC.,

        Defendants.

C.A. No. 18-cv-1217-MN

### SENTIUS INTERNATIONAL, LLC BRIEF IN OPPOSTION TO LG ELECTRONICS U.S.A. AND LG ELECTRONICS INC.'S MOTION TO <u>DISMISS THE JOINT INFRINGEMENT CLAIMS</u>

Dated: September 23, 2019

Of Counsel:

Sandeep Seth
SethLaw
Two Allen Center
1200 Smith Street, Ste. 1600
Houston, TX 77002
Telephone: (713) 244-5017
Facsimile: (713) 244-5018
Email: ss@sethlaw.com

Robert J. Yorio
Carr & Ferrell LLP
120 Constitution Drive
Menlo Park, California 94025
Telephone No.: (650) 812-3400
Facsimile No.: (650) 812-3444
Email: yorio@carrferrell.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiff*
*Sentius International, LLC*

TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. SUMMARY ........................................................................................................................ 2

III. LEGAL STANDARDS ...................................................................................................... 4

   A. Pleading ......................................................................................................................... 4

   B. Direct Infringement Liability for a Method Claim ........................................................ 4

IV. ARGUMENT ...................................................................................................................... 6

   A. As an Initial Matter, each of LG's MTDs, Including the Third MTD, Incorrectly Assume that the Claim Requires Joint Infringement ................................................................. 6

   B. The SAC's Joint Infringement Allegations Are Sufficient ............................................ 7

   C. Sentius's Allegations Are Well Beyond Those in Lyda v. CBS Corp. .......................... 8

   D. Joint Infringement Is Proper When a Step is Required by Design ................................ 9

V. CONCLUSION ................................................................................................................. 11

## TABLE OF AUTHORITIES

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) ...... passim

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ................................................................................ 4

*Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*, 845 F.3d 1357, 1364 (Fed. Cir. 2017) ...... 5, 6

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3rd Cir. 2009) ............................................ 4

*Ioengine, LLC v. Paypal Holdings, Inc.*, 2019 U.S. Dist. LEXIS 12195, *7, 2019 WL 330515 ... 5

*Pragmatus AV, LLC v. TangoMe, Inc.*, 2013 U.S. Dist. LEXIS 19075, at *14-16 (D. Del. Feb. 13, 2013) ................................................................................................................................... 7

*SiRF Tech., Inc. v. ITC*, 601 F.3d 1319, 1329 (Fed. Cir. 2010) ..................................................... 4

*Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370 (Fed. Cir. 2017) ............................................. 6, 8, 10

*Univ. of Mass. Med. Sch. v. L'Oréal S.A.*, No. 17-868-CFC-SRF, 2018 WL 5919745, at *3 (D. Del. Nov. 13, 2018) .................................................................................................................. 4

I.     INTRODUCTION

Due to repeated dilatory motions to dismiss, this case has been languishing since August 9, 2018, when Sentius first filed its Complaint alleging that LG directly infringed claims 17, 18, 62, 101, and 146 ("Asserted Claims") of U.S. Patent No. RE43,633 (the "'633 patent"). (D.I. 1 at ¶¶ 24 and 29.) LG first moved to dismiss the Complaint on December 21, 2018. (See D.I. 12 and 13 ("First MTD").)  In an effort to avoid delay, instead of opposing the motion, Sentius filed a FAC on January 18, 2019, and the Court denied the First MTD as moot. (D.I. 17.)   LG then filed a second motion to dismiss (D.I. 18 and 19) on February 1, 2019 ("Second MTD").

During the hearing on the Second MTD, the Court denied the motion with regard to the system claims (e.g. claims 17, 18 and 101) and granted the motion with regard to the method claims (e.g. claims 62 and 146).  Specifically, the Court noted that Sentius had not charted method claim 62 (as it had done with claim 17) showing how LG practiced each step of the claimed computer-implemented method. The Court recognized the low pleading standards under *Disc Disease,* but appeared skeptical whether that standard was met regarding LG's use of method claim 62 in the absence of similar element by element charting. (D.I. 24 at 25:25-27:5.)  With regard to Sentius' alternative pleading of direct infringement by LG under a joint infringement theory, the Court ruled that Sentius had not sufficiently plead the underlying facts supporting LG's vicarious liability under a joint infringement scenario. (*Id.* at 28: 1-22).The Court permitted Sentius to amend its complaint to allege more particularly LG's use of the computer-implemented method of claim 62 and its alternative vicarious liability theory under a joint infringement scenario.

In response to the ruling, Plaintiff filed the SAC (D.I. 27) on August 16, 2019 providing element-by-element charting regarding how LG used the claimed computer-implemented method of claim 62 by practicing each and every claimed step of the computer-implemented method via

certain software in the accused products. (*See* D.I. 27 at ¶¶ 24-35.) The SAC also expanded the factual basis for its allegation that LG was vicariously responsible for the use of the claimed method even if one of the claimed steps was construed to require an act of the smartphone user in identifying a misspelled word for which the user desires to have the spelling corrections displayed because such identification is needed and required by the design of the LG software in order to have the software identify and display the suggested spelling corrections. (*See* D.I. 27 at ¶¶ 30-35, 38, 39.) Nonetheless, Defendants LG Electronics U.S.A. and LG Electronics Inc. ("LG" or "Defendants") brought this instant third motion to dismiss ("Third MTD"). The motion does not challenge the claimed use of the computer-implemented method as charted for claim 62 under the claim construction scenario in which each step is performed by the software. The Third MTD only challenges the alternative pleading of LG's direct vicarious liability under the alternative joint infringement theory.

## II.    SUMMARY

The Third MTD should be denied because (1) Sentius has sufficiently pled in paragraphs 24-35 of the SAC how LG uses the computer-implemented method of claim 62 by performing each and every claimed step thereof via software in the accused products and thereby directly infringes that claim; and (2) Sentius has sufficiently plead in paragraphs 39 and 46 the factual basis to sufficiently place LG on notice why, if the Court construed the claim such that an element of the claimed computer-implemented method of claim 62 nonetheless required the user to perform a step, any such user performed step is dictated by the design of the LG software and LG is therefore still vicariously liable.

Sentius believes that no method step of the computer-implemented method of claim 62 could be reasonably construed as to require it to be performed by the user rather than the software. Nonetheless, to place LG on notice that should the Court rule during claim construction that one

of the steps does require a step to be performed by the user, LG would nonetheless be vicariously liable because any need for the user to perform the step is dictated by the design of the software. In particular, the claimed "selecting" step, requires a display address to be selected for further processing. Sentius believes that, properly construed, this step is conducted by the LG software—as are all other claimed steps. *See*, SAC at Paragraphs 30-35. In particular, the LG software, as plead, selects the display address for further processing in response to a user input on the phone's display. SAC at ¶ 30. However, if the Court nonetheless construes this step as being performed by the user and not the software, it is clear that, as plead, the design of the LG software requires the user to select a displayed red squiggled word in order to obtain the benefit of seeing suggested spellings for that word. *Id*. at 38, 39. These allegations set forth sufficient facts to plead joint infringement liability.

By filing the Third MTD, Defendants again attempt to avoid claim construction and a substantive resolution of this case. The Court should not countenance any further delay. The Third MTD is meritless since the Second Amended Complaint ("SAC") provides reasonable basis to proceed with a direct infringement claim against LG for its use of the claimed computer-implemented method of claim 62. Paragraph24-35 of the SAC specify exactly how LG uses the claimed method of asserted claim 62 via its software. In the event that the Court construes a claim element be met only through an act of the user, paragraphs 30-35, 38, and 39 of the SAC plead the factual basis for LG's vicarious liability, namely by requiring the user to indicate to which misspelled word it wishes to see suggested spelling for before the accused feature will display suggested spellings.

The Court should therefore: (a) deny the motion; (b) order LG to answer the Second Amended Complaint; and (c) set a scheduling conference.

## III. LEGAL STANDARDS

### A. Pleading

When addressing 12(b)(6) motions, a court first separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3rd Cir. 2009). Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A plausible claim does more than merely allege entitlement to relief; it must also demonstrate the basis for that "entitlement with its facts." *Id.* In assessing the plausibility of a claim, a court must "'construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler*, 578 F.3d at 210. "The court's determination is not whether the non-moving party 'will ultimately prevail,' but whether that party is 'entitled to offer evidence to support the claims.'" *Univ. of Mass. Med. Sch. v. L'Oréal S.A.*, No. 17-868-CFC-SRF, 2018 WL 5919745, at *3 (D. Del. Nov. 13, 2018). A court's analysis is a context-specific task and it should "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### B. Direct Infringement Liability for a Method Claim

A party can be directly liable for infringement of a method claim when it implements its use of the method via software that performs each and every step of the method. See, e.g. *SiRF Tech., Inc. v. ITC*, 601 F.3d 1319, 1329 (Fed. Cir. 2010). In SiRF, the Federal Circuit did not reach the question of joint infringement "because we do not read the relevant claims as requiring that any of the specified actions be taken by SiRF's customers or by the end users of the GPS devices." Rather, the Federal Circuit found that when properly construed, SiRF met the claim limitations

4

directly by either initiating or having its processor and code carry out the claimed steps:

> When properly construed, it is clear that SiRF infringes as its devices and software dictate the performance of the "processing" and "representing" steps. Once the technology is enabled, SiRF's SiRFstarIII chip and software, designed and built by SiRF, automatically perform the disputed steps of the claims at issue because the SiRFstarIII chips are programmed by SiRF to use the InstantFix ephemeris data automatically if it has been transmitted to the remote device. Neither SiRF's customers (the equipment manufacturers and software developers) nor the end users of the GPS receivers can modify the use of the EE files by SiRF's software or the functionality of the SiRFstarIII chip. Once the GPS receiver is enabled and ready to process the data, only SiRF's actions are involved in "processing" or "representing" the data.
>
> SiRF performs all of the claim limitations of claim 1 of the '651 patent and claim 1 of the '000 patent, and therefore directly infringes the asserted claims.

*Id.* at 1331.

Moreover, a party may be liable for direct infringement of a method claim even when its use of the method (via software or otherwise) includes others in the performance one or more claimed steps. In *Ioengine, LLC v. Paypal Holdings, Inc.*, 2019 U.S. Dist. LEXIS 12195, *7, 2019 WL 330515, for example, the court held that IOENGINE had sufficiently plead direct infringement liability against PayPal though third-part developers were involved in carrying out certain steps of the claimed method where "the ability of PayPal's POS Partners to interact with the accused PayPal products depends on their use of PayPal's software development kits, which control the performance of the steps of the method claims when the PayPal software is run by the POS Partners. The PayPal software thus establishes the manner and timing of the performance of the claimed method steps by controlling the manner in which the POS Partner interacts with the accused PayPal products to carry out the infringing functionality." As the court noted, proof of joint infringement requires the plaintiff to show that one entity "directs or controls" the other's performance, or that the actors "form a joint enterprise." (citing *Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*, 845 F.3d 1357, 1364 (Fed. Cir. 2017) (quoting *Akamai Techs., Inc. v. Limelight*

5

*Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc)). Proof that a defendant engaged in joint infringement by directing and controlling another party's infringing conduct can be shown where the defendant "(1) 'conditions participation in an activity or receipt of a benefit' upon others' performance of one or more steps of a patented method, and (2) 'establishes the [*5] manner or timing of that performance.'" *Eli Lilly*, 845 F.3d at 1365 (quoting *Akamai*, 797 F.3d at 1023).

The court observed that Limelight was found directly liable in *Akamai*, because: "if Limelight's customers wish to use Limelight's product, they must tag and serve content." *Ioengine*, U.S. Dist. LEXIS 12195, at *8. *Akamai*, 797 F.3d at 1024. Likewise, the court found instructive the Federal Circuit's decision in *Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370 (Fed. Cir. 2017). In *Travel Sentry*, the defendant, Travel Sentry, performed certain steps of the patented method, and that agents of the Transportation Security Administration ("TSA") performed the final two steps. The Federal Circuit held that the evidence was sufficient for a reasonable jury to conclude that the TSA agents' performance of the final two claim steps was attributable to Travel Sentry. The Court explained that "whatever benefits flow to TSA . . . can only be realized if TSA performs the final two claim steps." 877 F.3d at 1382-83. The court, moreover, reaffirmed the conditioning standard articulated in Eli Lilly, stating that conditioning does not require the imposition of a "legal obligation" or a "technological prerequisite," nor does it require verification of compliance or a threat of denial of treatment. *Ioengine*, U.S. Dist. LEXIS 12195, at *9-10.

### IV. ARGUMENT

#### A. As an Initial Matter, each of LG's MTDs, Including the Third MTD, Incorrectly Assume that the Claim Requires Joint Infringement

In the Third MTD (and LG"s previous MTDs), LG implicitly makes the incorrect assumption that the computer-implemented method of claim 62 requires a user step. The claim does not on its face recite any user performed step. Rather, claim 62 is explicitly directed to a

6

computer-implemented method and the SAC recites how LG uses the claim method by carrying out each claimed step via its software when a user spell checks a document using the accused "red squiggly" spell check feature of the accused products. See SAC at ¶¶ 24-35. To the extent that LG is asserting that the claim requires joint infringement, Sentius disputes such a claim. Therefore the parties do not agree on claim construction. In general, this Court does deny motions to dismiss that require a district court to construe the meaning of claim terms and perform an infringement analysis, as inappropriate at the pleading stage. *Pragmatus AV, LLC v. TangoMe, Inc.*, 2013 U.S. Dist. LEXIS 19075, at *14-16 (D. Del. Feb. 13, 2013) (reviewing cases).

### B. The SAC's Joint Infringement Allegations Are Sufficient

Sentius contends that LG practices and uses each element of the asserted method claims (Claims 62 and 146) of the '633 Patent. *See* Second Amended Complaint, ¶¶ 37 and 44. Plaintiff alleges that LG does so by including software instructions which execute the various steps of the method claims on its accused LG Smartphones when the cell phones are in use. See Paragraphs 24-35 of the Second Amended Complaint. Accordingly, LG's Smartphones directly infringe computer-implemented method claims 62 and 146 of the '633 Patent.

Plaintiff also alleges, in the alternative, liability on the part of LG for direct infringement of Claims 62 and 146 on a joint or a divided infringement basis under Section 271 (a) because LG, if any properly construed step is required to be performed by a user, LG directs or controls the performance of the step via the design of its software. *See, e.g.*, Paragraphs 39 and 46 of the Second Amended Complaint. As explained in Paragraph 39, if the step of "selecting a discrete portion of an image of the textual source material" is construed to require the user of the LG Smartphone to practice that step, the LG software by design requires the user to first indicate which misspelled word the user wishes to see suggested

spellings for before the LG software will display the spelling suggestions. See SAC at ¶¶ 30-35, 38, 39. LG thus controls the timing of the user's selection of the spell check feature by designing its software to require the user to indicate the misspelled word after the LG software has identified it as potentially misspelled and has placed the red squiggly underline below the word and before any suggested corrections are displayed. In this way LG directs and controls the user's performance of the select a discrete portion of an image of the textual material step of the method claims in accordance with decisions of the Federal Circuit in *Akamai Technologies, Inc. v. Limelight Networks, Inc.* (*Akamai V*)797 F. 3d 1020, 1022-23 (Fed. Cir. 2015) (en banc) and *Travel Sentry, Inc. v. Troop*, 877 F. 3d 1370, 1380 (Fed. Cir. 2017) ("a third party hoping to obtain access to certain benefits can only do so if it performs certain steps identified by the defendant, and does so under the terms prescribed by the defendant.").

### C. Sentius's Allegations Are Well Beyond Those in Lyda v. CBS Corp

Unlike *Lyda*, Sentius pleads allegations that describe how LG actually controls the end user that show why any required end user action would be attributable to LG because the user's indication of which misspelled word for which the user wants the accused feature to display suggested corrections is a required act by design as a prerequisite to the system displaying the suggested corrections. *Lyda* is distinguishable because the users sent text messages votes to test an electric interactive voting system for the CBS Big Brother show. There were no factual allegations to support direction and control over the voting system that was attributable to Defendants. In contrast, Sentius has alleged how LG actually performs each step of the claimed computer-implemented method via its software contained in the accused products. Furthermore, in the event a claimed step is determined during claim construction to require the user to perform it, Sentius has pled the control that LG exerts over users vis-a-vis the

accused spell check feature. LG end users cannot use the red squiggly spell check feature unless they select a red squiggly word after it has been identified by LG and before any spelling suggestions can be displayed. The user is required to take certain action as a matter of software design. The fact that the accused feature could be turned off is irrelevant. The method cannot execute without the smartphone being turned on either but turning on a smartphone is not a claimed step; neither is turning on the accused feature.

### D. Joint Infringement Is Proper When a Step is Required by Design

LG states in the Third MTD:

> "Sentius's joint infringement allegations are also improper because Sentius pleads only that end users perform a voluntary action (click on misspelled words), which is not sufficient under *Akamai*. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1025 (Fed. Cir. 2015) ("In sum, Lime-light's customers do not merely take Limelight's guidance and act independently on their own. Rather, Limelight establishes the manner and timing of its customers' performance so that customers can only avail themselves of the service upon their performance of the method steps.")."

(Third MTD at p. 5)

This argument shows that LG is not concerned with the law or how that law applies to the facts here but rather is concerned with delay. Specifically, LG argues that Akamai "found that guidance and independent acts by end users are not sufficient for joint infringement" and therefore there is no vicarious liability. LG sets up a straw man. Sentius does not allege that LG merely provides guidance and nowhere does Sentius allege nor does LG show that the users of the accused spell check feature are merely engaged in independent acts that are required to be performed by the design of the accused feature. This case is not like *Lyda*. Here, Sentius shows how LG's software performs each and every one of the claimed steps demonstrating LG is using the claimed computer-implemented method. Moreover, Sentius shows how if the Court were to construe the "selecting" step such that it

9

requires an act of the user, how LG's software demands such an act be taken. The user must first indicate which word that the accused feature has identified with a "red squiggly" underline in order to see the corrected spellings for that word that are identified and displayed by the accused feature. Moreover, this is not optional but by design. Finally, LG makes the throw away argument that there is no requirement that the spell check feature be used. But when the feature is not used, none of the steps are met. No method claim is infringed when it not used. And inherent in LG's argument that "publicly available video shows (sic) spell check feature can be turned off using the phone settings" just highlights that the accused feature is on by default. One cannot make use of the accused spell check feature to see suggested spellings without first meeting the necessary pre-condition of indicating on the display for which word the user wants to see the suggested spelling suggestions. This is precisely the <u>standard actually imposed by</u> the *Akamai* and *Travel Sentry* cases given that the user is required by design to take this action in order to see the spelling suggestions. Neither Akamai nor Travel Sentry state that an agreement between the defendant and third-party must exist.

Indeed, LG's argument was rejected by the Federal Circuit in *Travel Sentry*. *See*, *Travel Sentry*, 877 F. 3d at 1379-85. The test is not whether a user has an independent choice, but rather whether certain benefits (spell check spellings) can only be obtained if the user performs certain steps required by the defendant (clicking on the misspelled word with the red squiggly line below the word).

Finally, LG argues "[i]f Sentius's joint infringement allegations were sufficient, any software feature practiced by end users would be subject to joint infringement claims because software features provide some benefit to end users." But this is not the test. The test is

whether any claimed step required to be performed by the user to benefit from the accused feature is required by the accused infringer such that vicarious liability attaches, not merely whether some software feature has benefit. Here, LG dictates by its design that the user must select one of the words that was identified by the accused feature as misspelled before the user can see the spelling corrections for that word. Such an act is not optional. The user can only avail themselves of the benefit off the accused feature by performing that step, which Sentius disputes is even a claimed step. Rather, as Sentius alleges, the claimed step is the software selecting what display coordinates the user indicated so that the accused feature can perform certain of the other claimed steps. LG does not and cannot show that some form of written agreement is legally required between LG and its smartphone customers because no case requires such an agreement. Nor can LG show any case law that would nonsensically require that the feature must always be used in order to find infringement. LG controls precisely what the user must do when using the accused feature in order to benefit therefrom.

## V. CONCLUSION

LG respectfully requests that the Court deny the Third MTD, order LG to finally answer the complaint, and set this case for a scheduling conference and issue a case management order so the parties can proceed with the substantive merits of the case.

| | |
|---|---|
| Dated: September 23, 2019 | Respectfully submitted, |
| Of Counsel: | FARNAN LLP |
| Sandeep Seth<br>SethLaw<br>Two Allen Center<br>1200 Smith Street, Ste. 1600<br>Houston, TX 77002<br>Telephone: (713) 244-5017<br>Facsimile:  (713) 244-5018<br>Email: ss@sethlaw.com<br><br>Robert J. Yorio<br>Carr & Ferrell LLP<br>120 Constitution Drive<br>Menlo Park, California 94025<br>Telephone No.: (650) 812-3400<br>Facsimile No.:  (650) 812-3444<br>Email:  yorio@carrferrell.com | /s/ Michael J. Farnan<br>Brian E. Farnan (Bar No. 4089)<br>Michael J. Farnan (Bar No. 5165)<br>919 N. Market Street, 12th Floor<br>Wilmington, DE 19801<br>Telephone: (302) 777-0300<br>Fax: (302) 777-0301<br>bfarnan@farnanlaw.com<br>mfarnan@farnanlaw.com<br><br>*Attorneys for Plaintiff*<br>*Sentius International, LLC* |