13:12:40

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

SENTIUS INTERNATIONAL, LLC,  )
                             )
         Plaintiff,          )
                             ) C.A. No. 18-1217-MN
v.                           )
                             )
LG ELECTRONICS U.S.A., INC., )
et al.,                      )
                             )
         Defendants.         )

                   Monday, February 10, 2020
                   2:00 p.m.
                   Motion Hearing


                   844 King Street
                   Wilmington, Delaware


BEFORE:   THE HONORABLE MARYELLEN NOREIKA
         United States District Court Judge



APPEARANCES:


        FARNAN LLP
        BY:  MICHAEL J. FARNAN, ESQ.

        -and-

        CARR & FERRELL LLP
        BY:  ROBERT J. YORIO, JR., ESQ.


               Counsel for the Plaintiff

```
 1    APPEARANCES CONTINUED:

 2

 3
              RICHARDS LAYTON & FINGER, PA
 4            BY:  FREDERICK L. COTTRELL, III, ESQ.

 5               -and-

 6            KASOWITZ BENSON TORRES LLP
              BY:  JOHN W. DOWNING, ESQ.
 7            BY:  MARCUS BARBER, ESQ.

 8                   Counsel for the Defendants

 9
                         - oOo -
10                 P R O C E E D I N G S

11         (REPORTER'S NOTE:  The following hearing was held in

12    open court, beginning at 2:00 p.m.)

13

14

15

16            THE COURT:  Good afternoon.  Please be seated.

17    Let's start with some introductions.

18            Mr. Farnan.

19            MR. FARNAN:  Good afternoon, Your Honor.

20    Michael Farnan for the record.  With me is Robert Yorio from

21    Carr & Ferrell.

22            THE COURT:  Good afternoon.

23            Mr. Cottrell.

24            MR. COTTRELL:  Thank you, Your Honor.  Fred

25    Cottrell from Richards Layton for the LG defendants.  With
```

```
14:01:24   1   me at counsel table is Marcus Barber and John Downing.
14:01:30   2   Mr. Downing will be presenting for LG.
14:01:32   3               THE COURT:  Okay.
14:01:33   4               MR. COTTRELL:  Thank you, Your Honor.
14:01:34   5               THE COURT:  Thank you.
14:01:38   6               So I have read the papers and I have looked at
14:01:40   7   the red line version of the complaint and I understand that
14:01:43   8   the only issue now is joint infringement; correct?
14:01:46   9               MR. YORIO:  Correct, Your Honor.
14:01:47  10               MR. DOWNING:  That's correct.  That's correct.
14:01:49  11               THE COURT:  Okay.  I'll hear from you.  And if
14:01:51  12   you don't mind standing when you speak, we're kind of old
14:01:55  13   fashion in this courtroom.
14:01:57  14               MR. DOWNING:  Your Honor, I'm handing
14:01:59  15   plaintiff's counsel a copy of the presentation that I
14:02:01  16   provided to your clerk.  I believe you have it in front of
14:02:04  17   you.
14:02:04  18               THE COURT:  Okay.
14:02:05  19               MR. DOWNING:  Your Honor, good afternoon.  May
14:02:10  20   it please the Court, my name is John Downing and I'm here
14:02:17  21   representing LG.  I have prepared a brief presentation, but
14:02:20  22   before I begin, can I answer any questions from you related
14:02:23  23   to the briefing or do you --
14:02:26  24               THE COURT:  Go ahead and tell me what you want
14:02:28  25   me to know.
```

14:02:30  1                MR. DOWNING:  Your Honor, we are here today to
14:02:31  2     discuss the same allegations and the same cases that we
14:02:35  3     discussed during the August 2019 motion to dismiss hearing.
14:02:38  4     Your Honor correctly dismissed the allegations in the first
14:02:41  5     amended complaint and the allegations here remain less
14:02:45  6     sufficient for two reasons.  First, Your Honor provided
14:02:49  7     plaintiff with an opportunity to amend its complaint.  And
14:02:54  8     second, Your Honor provided them the *Lyda v. CBS*, 838 F.3d
14:03:03  9     1331 Federal Circuit 2016 decision as a guidepost on what
14:03:06 10     not to do.  But today they did not take advantage of the
14:03:11 11     opportunity and we're back here today talking about the same
14:03:14 12     allegation.
14:03:15 13                So turning to slide two, Your Honor, there are
14:03:22 14     -- there are three main arguments that we believe are
14:03:27 15     critical in assessing this joint infringement issue.  The
14:03:31 16     first one we talked about the Court already viewed the same
14:03:34 17     allegations and dismissed them at the August --
14:03:36 18                THE COURT:  Well, the allegations are a little
14:03:39 19     different.  They did add quite a bit of text to the
14:03:41 20     complaint; right?
14:03:43 21                MR. DOWNING:  Well, if you turn to -- I'll just
14:03:50 22     head right into that issue on slide 12, Your Honor.  So
14:03:52 23     slide 12, Your Honor, is a cutout of the August 2nd hearing
14:04:02 24     transcript.  And the August 2nd hearing transcript, pages 28
14:04:08 25     to 29, Your Honor identified two paragraphs, paragraph 27

| | |
|---|---|
| 14:04:12 1 | and paragraph 34, which contained the joint infringement |
| 14:04:17 2 | allegations. |
| 14:04:18 3 | If you turn now to page 13, you will see a |
| 14:04:21 4 | comparison of the redline version of paragraphs 27 and 34. |
| 14:04:31 5 | And there were no new allegations in paragraph 34, so we can |
| 14:04:35 6 | ignore that.  But if you look at paragraph 27, what they |
| 14:04:38 7 | added is shown on slide 13 circled in red.  And I'll just go |
| 14:04:44 8 | ahead and read it for you.  "LG accomplishes this by |
| 14:04:51 9 | requiring the user to click on the misspelled word |
| 14:04:54 10 | identified by LG by having the LG Smartphone display the |
| 14:04:57 11 | word with a red line underneath it, if the user wishes the |
| 14:05:02 12 | LG Smartphone display suggested spelling corrections." |
| 14:05:05 13 | So, Your Honor, this is basically what is |
| 14:05:08 14 | accused in the case.  You have your phone, there is a red |
| 14:05:11 15 | squiggly line that appears on the phone.  The user will |
| 14:05:15 16 | click that and receive spelling suggestions.  So that is |
| 14:05:17 17 | what has been alleged as different than what -- |
| 14:05:22 18 | THE COURT:  I have to take that as true; right? |
| 14:05:24 19 | MR. DOWNING:  Right, Your Honor.  But the next |
| 14:05:27 20 | slide, slide 14, will demonstrate to Your Honor why this is |
| 14:05:31 21 | not new.  Slide 14 on your right-hand side is the first |
| 14:05:36 22 | amended complaint, the allegations that were made in the |
| 14:05:39 23 | first amended complaint and the allegations that Your Honor |
| 14:05:42 24 | reviewed before dismissing it.  And as you can see, the red |
| 14:05:46 25 | squiggly line allegation on the top underlined in red was |

14:05:50  1  already in the first amended complaint.  The middle
14:05:56  2  discloses the selecting of portion of the displayed
14:06:01  3  document, selecting the red squiggly line and receiving the
14:06:04  4  suggestion.  And the bottom highlighted is selecting the
14:06:07  5  suggested spelling.  So all of those allegations that Your
14:06:11  6  Honor reviewed and looked at and determined whether or not
14:06:14  7  to dismiss the first amended complaint, nothing is new
14:06:19  8  between the first amended complaint and the second amended
14:06:21  9  complaint.  This is really a situation of old wine in new
14:06:27 10  bottles.
14:06:27 11             Moving on, Your Honor, slide 15.  Even if we
14:06:35 12  assume that these are new allegations and we should look at
14:06:38 13  these allegations and consider --
14:06:41 14             THE COURT:  So what more do you think they need
14:06:43 15  to do in order to plead infringement adequately?
14:06:48 16             MR. DOWNING:  Your Honor, I think they would
14:06:49 17  need to plead some sort of -- based on the case law they
14:06:52 18  would need to prove some sort of instruction, some agreement
14:06:56 19  between LG and the end users.
14:06:58 20             THE COURT:  But if LG is telling them, look, if
14:07:01 21  you want to fix that spelling, we require you to click on
14:07:04 22  the word and get the options for new spelling, why isn't
14:07:08 23  that sufficient at this point?
14:07:10 24             MR. DOWNING:  Because there are no allegations
14:07:12 25  in the complaint that state what Your Honor just said.

```
14:07:14  1              THE COURT:  I took my understanding from what I
14:07:16  2   read in the complaint, so I don't agree with you that those
14:07:20  3   allegations aren't there, because they do say that the LG
14:07:23  4   requires user to click on the misspelled word if the user
14:07:28  5   wishes to -- wishes the LG smartphone to display suggested
14:07:34  6   spelling corrections.  That's what I just said.
14:07:37  7              MR. DOWNING:  Great.  I would like to address
14:07:39  8   that point and use Lyda as an example of why that's not
14:07:42  9   sufficient.
14:07:42 10              THE COURT:  I'm asking you what they need to do.
14:07:44 11   I know, I read the Lyda case, I cited it before.  I now have
14:07:49 12   different allegations.  You're saying well, they're not
14:07:51 13   really different, but they look different to me.  So what I
14:07:54 14   need to understand is when you're saying they're not enough,
14:07:57 15   what more would you require?  It can't possibly be that
14:08:02 16   they're required to produce an agreement that you all have
14:08:05 17   with your customers that says we want you to infringe the
14:08:08 18   patents.  Right?  So what is it that you want?
14:08:11 19              MR. DOWNING:  Great.  So what we would like to
14:08:13 20   see, or what is required in this case would be some sort of
14:08:17 21   allegations that the scribe that LG is instructing, that the
14:08:22 22   LG is instructing its users to perform some act.  I think
14:08:26 23   it's the Ioengine case, if Your Honor looks at -- bear with
14:08:32 24   me for one second.  Slide 21, Your Honor.  So Ioengine was a
14:08:46 25   case, it was a 12(b)(6) decision, and it was a 12(b)(6)
```

14:08:51 1   decision that looked at *Akamai* and looked at *Travel Sentry,*
14:08:55 2   and then it came up with its own rule on whether or not
14:08:59 3   *Ioengine* complied with the 12(b)(6) standard.  And the two
14:09:04 4   issues that the court looked at was the benefits of a
14:09:08 5   particular -- I'm reading from slide 21, "the benefits of a
14:09:11 6   particular service or product can be obtained only if third
14:09:14 7   parties comply with instructions given by the defendant."
14:09:17 8           And here in this case, there are no allegations
14:09:21 9   of instructions from LG to the end users at all in the
14:09:25 10  complaint.
14:09:25 11          The second requirement was the instructions
14:09:28 12  directed third parties to perform acts.  LG doesn't instruct
14:09:32 13  -- there are no allegations that LG instructs anybody to
14:09:36 14  perform any act.  The spellcheck feature is one of a
14:09:41 15  thousand features on the phone.  LG does not instruct its
14:09:45 16  users to perform this in a certain way.  And that's
14:09:49 17  important, Your Honor, because slide 22 are the *Akamai* and
14:09:56 18  *Travel Sentry* decisions.  These decisions are not 12(b)(6)
14:10:01 19  decisions, they're decisions that were decided on summary
14:10:03 20  judgment.  So when you look at the type -- when you look at
14:10:06 21  the type of allegations that are required at the summary
14:10:09 22  judgment stage, we're looking at, you know, much more than
14:10:13 23  putting a product in a stream of commerce.  And then we're
14:10:18 24  looking at much more than looking at putting the product in
14:10:21 25  a stream of commerce, to *Akamai* you have an agreement and

```
14:10:25  1    you have a letter instructing customers, you have
14:10:29  2    step-by-step instructions, guideline and quality assurance.
14:10:32  3    The same is true with Travel Sentry, Travel Sentry you have
14:10:37  4    a memorandum of understanding.  You are not just selling
14:10:40  5    products, but you are telling your customers exactly what to
14:10:43  6    do and you are telling them how to do it.  In these two
14:10:46  7    cases they're contractually obligated to perform it in a
14:10:50  8    certain way.  That's what the joint infringement is getting
14:10:52  9    at, not just selling a product.
14:10:54 10               And then the third issue that we wanted to bring
14:10:58 11    up to Your Honor is that regardless of what the allegations
14:11:04 12    are, whether or not they were pled sufficiently, regardless
14:11:07 13    of what Your Honor decides from this motion to dismiss,
14:11:12 14    slide 23, vicarious liability is not applicable when there
14:11:17 15    is no opportunity to stop or limit the infringement.
14:11:20 16               And if you turn to slide 24, it's the timeline
14:11:25 17    of what has occurred in this case.  This case is about past
14:11:30 18    damages.  I'm reading from slide 24.  On February 16, 2014,
14:11:35 19    the '633 patent expired.  I believe that's an undisputed
14:11:40 20    fact.  On August 9th, 2018, more than four-and-a-half years
14:11:44 21    after the patent expired, LG gets sued on this patent.  So
14:11:48 22    we're talking about damages in the past, you know, not
14:11:51 23    anything that LG can do or control from this time going
14:11:54 24    forward.
14:11:55 25               There are also allegations in the complaint that
```

confirm that LG received notice of the patents after the '633 patent expired. So we're really in a situation here where there is absolutely nothing that LG could do to change anything that it did in the past based on any joint infringement allegations that are brought today or when LG first received notice.

Your Honor, if you turn to slide 25, slide 25 comes directly from *Akamai*. The *Akamai* case set forth the direction for a control standard. If you look at the top, it says, "To determine if a single entity directs or controls the acts of another, we continue to consider general principles of vicarious liability." So the Akamai case was looking at the -- was looking at vicarious liability cases to come up with a direction or control standard.

And if you look at the bottom, I have highlighted it in red on slide 25, the court in the Federal Circuit cites to the *Grokster* case that states in the parenthetical, "an actor infringes vicariously by profiting from direct infringement if that actor has the right and ability to stop or limit infringement."

And Your Honor, in this case, as we've explained, LG can't do anything. It's received notice of the patents and it was sued well after the patent expired. And so in this case under the *Akamai* analysis and under the

14:13:29  1   direction for a control analysis, this is an independent
14:13:32  2   basis for dismissing the joint infringement allegations.
14:13:36  3               THE COURT: Okay. Thank you.
14:13:46  4               MR. YORIO: Good afternoon, Your Honor. Robert
14:13:49  5   Yorio for the plaintiff.
14:13:52  6               With respect to new allegations in the second
14:13:57  7   amended complaint, counsel focused just on 39, but there are
14:14:03  8   other paragraphs that are new, including all the execution
14:14:07  9   steps. But the one we're talking about now, the step of
14:14:10 10   selecting a discrete portion of an image of a textual source
14:14:15 11   material, there is new allegations in paragraph 30 where
14:14:19 12   that specific step is discussed.
14:14:23 13               THE COURT: New 30 or old 30?
14:14:26 14               MR. YORIO: New 30, Your Honor. In the second
14:14:30 15   amended complaint on page 9.
14:14:31 16               THE COURT: Okay. What are you referring to,
14:14:35 17   these instructions are used by LG and the accused smartphone
14:14:38 18   to receive user input on a given misspelled word.
14:14:44 19               MR. YORIO: Yes. And then the next spellcheck
14:14:48 20   specific paragraph is 38, which talks about this step among
14:14:55 21   others being, the software is programmed to perform those
14:15:01 22   steps. And 39 specifically deals with the one that was the
14:15:04 23   subject of the hearing before Your Honor last year. And 46
14:15:10 24   is similar with respect to making the benefit of spellcheck
14:15:15 25   functionality conditioned on the user's performance of any

```
 1   steps that involve the user and establish the manner of
 2   timing of that performance. And that's the holding of
 3   Travel Sentry in light of Eli Lilly and Akamai.
 4           With respect to controlling the manner and
 5   timing, the user can't avail itself, himself or herself of
 6   spellcheck until the misspelled word appears. So in that
 7   way LG's software controls the timing. It's until you
 8   misspell a word and the software identifies it and then
 9   underlines it for you, the user can't make a decision one
10   way or the other. And once that misspelled word appears,
11   the user has the decision to make, skip over the misspelled
12   word and don't worry about it in which case the user is not
13   availing him or herself of the benefits, or click, simply
14   click on the line, on the misspelled word, the suggested
15   spellings will appear and the user can make a choice. And
16   the user only gets the benefit of spellcheck if it followed
17   the instruction to click on the line.
18           Counsel was talking about instructions from the
19   Ioengine case. Instructions can be specific, they can be
20   wordy, or they can just appear from the way the software
21   program shows the misspelled word. That's the case here.
22   When you look at Travel Sentry and Eli Lilly together, there
23   is no legal obligation, there is no agreement that's
24   required. There is no formal instruction that has to be
25   given. The test is if the user can get the benefit only by
```

```
14:17:13  1    performing the step, which is what we allege here in the
14:17:17  2    paragraphs I noted, Travel Sentry is satisfied.
14:17:23  3             THE COURT:  What about the vicarious liability
14:17:25  4    point?
14:17:26  5             MR. YORIO:  I'm sorry?
14:17:26  6             THE COURT:  What about the vicarious liability
14:17:29  7    point?
14:17:32  8             MR. YORIO:  That argument was presented on
14:17:34  9    page 5 and 6 of the reply brief, Your Honor.  It's not
14:17:38 10    mentioned in the opening brief.  So it's a new point that
14:17:41 11    the defendant has raised.
14:17:42 12             THE COURT:  Right.  But I gave you guys an
14:17:44 13    opportunity to come in here today, so what's your response?
14:17:49 14             MR. YORIO:  On those pages of the reply brief,
14:17:53 15    they cite to footnote 2 of the page 1022 of the Akamai
14:17:59 16    opinion.  And the court in Akamai noted that it derived its
14:18:07 17    direction and control standard from various liability
14:18:10 18    standard.  Not that there was a single standard from
14:18:16 19    vicarious liability taken over to joint infringement, but
14:18:18 20    that the direction and control standard is derived from that
14:18:23 21    based on those vicarious principles.
14:18:25 22             As the court in Travel Sentry observed, the
14:18:30 23    Akamai decision broadened the circumstances in which other's
14:18:32 24    acts may be attributed to an infringer to support divided
14:18:37 25    infringement and relax the tighter constraints on
```

14:18:41 1   attribution.  And the cite to the *Grokster* copyright case
14:18:45 2   that counsel mentioned in the slide, that's a copyright
14:18:48 3   case, and it held that vicarious liability could be found if
14:18:52 4   the actor had the right and ability to stop the
14:18:55 5   infringement.  Those are the facts of the case.  It's
14:18:57 6   contextual.  They were using that as a -- the court in
14:19:02 7   *Travel Sentry*, is using -- excuse me, in *Akamai* is using
14:19:08 8   that as an example of, an illustrative example of the
14:19:12 9   application of the vicarious liability, but it's not the
14:19:16 10  holding of the case.  That particular set of facts showed
14:19:21 11  vicarious liability and that was enough.  But it's just
14:19:24 12  illustrative.  And it's not the holding of the case.
14:19:28 13          And there is no case, *Akamai* or otherwise, that
14:19:32 14  says the defendant must have the right and ability to stop
14:19:35 15  or limit the infringement in order for a joint infringement
14:19:39 16  theory to be viable.  It's just not there.
14:19:42 17          And LG's argument that it is such a requirement
14:19:47 18  is not in line with *Travel Sentry*, it's not in line with *Eli
14:19:54 19  Lilly,* and it's just not an example of the holding of
14:19:59 20  Akamai*, so it's not an independent ground to grant the
14:20:02 21  motion.
14:20:02 22              THE COURT:  Okay.
14:20:04 23              MR. YORIO:  Thank you, Your Honor.
14:20:12 24              MR. DOWNING:  Your Honor, just --
14:20:13 25              THE COURT:  Are you aware of any cases where the

Case 1:18-cv-01217-MN   Document 42   Filed 02/18/20   Page 15 of 18 PageID #: 348
15

14:20:16 1  court has clearly found that you cannot be liable for joint
14:20:20 2  infringement if the patent has expired?
14:20:28 3           MR. DOWNING:  No, Your Honor.  I am aware of the
14:20:30 4  concept of inducement, induced infringement, Your Honor,
14:20:34 5  which has additional elements such as notice and has
14:20:38 6  additional elements such as knowledge of the patent.  In
14:20:41 7  this case, a joint infringement is not allowed to have some
14:20:44 8  sort of notice component.  There is absolutely no reason
14:20:48 9  that anybody would ever plead inducement.  In fact, in this
14:20:51 10 case because the patents are expired they can't plead
14:20:54 11 inducement or contributory infringement, so that is why
14:20:58 12 we're seeing the joint infringement claim.  I believe that
14:21:04 13 using joint infringement in this case to -- in this matter
14:21:08 14 would completely swallow the inducement rule and would
14:21:13 15 completely swallow inducement.
14:21:18 16          THE COURT:  Okay.
14:21:20 17          MR. DOWNING:  Your Honor, I just have a couple
14:21:22 18 quick points if Your Honor would allow.
14:21:23 19          THE COURT:  Just give me one second.
14:21:28 20          MR. DOWNING:  Your Honor, the plaintiffs pointed
14:21:32 21 to paragraphs 30, 38 and 46 as new paragraphs apart from
14:21:42 22 what we discussed before.  Our position is these are just
14:21:47 23 again generic presentations of boiler language that the *Lyda*
14:21:52 24 case rejected.  In fact, plaintiff's discussion of why this
14:21:57 25 case gets out of *Lyda* would in fact make the *Lyda* decision

14:22:05  1   not -- plaintiff's description of the *Lyda* case would turn
14:22:10  2   *Lyda* on its head.
14:22:11  3            I just would like to quickly direct you to slide
14:22:14  4   18 of the slides.  Slide 18 has the *Lyda* first amended
14:22:19  5   complaint on the left-hand side, underlined are the *Lyda*
14:22:23  6   allegations, the *Lyda* allegations require the participation
14:22:27  7   of people under the control or direction of an independent
14:22:31  8   contractor engaged by defendant CBS.  On the right-hand side
14:22:36  9   are the allegations that we just talked about.  LG
14:22:38 10   accomplishes this by requiring the user to click on
14:22:43 11   misspelled words identified by LG by having the LG
14:22:46 12   smartphone display the word with a red line underneath it.
14:22:50 13            So for the *Lyda* case, you can't participate in
14:22:53 14   the big brother voting process if you don't have the user's
14:22:58 15   texting.  If you want to take part in the voting system, you
14:23:02 16   have to have users actually text.  In this case, for the
14:23:06 17   Sentius allegations, if you want to have a misspelled word,
14:23:09 18   you have to have users click on the red squiggly line.
14:23:12 19   There is no distinction between these two cases.  If taken
14:23:16 20   as true that all you have to do is plead that the product is
14:23:19 21   used in a certain way and users performing or operating that
14:23:24 22   product is sufficient allegations for joint infringement,
14:23:29 23   then any product put into the stream of commerce would
14:23:34 24   satisfy that rule.
14:23:35 25            The last issue, Your Honor, *Eli Lilly.*  We

```
14:23:39  1   talked about Travel Sentry, but Eli Lilly did not have an
14:23:43  2   agreement, that is true, but Eli Lilly was a case where
14:23:46  3   there were doctors who gave instructions to users using
14:23:51  4   medicine, the instructions were on the -- detailed
14:23:56  5   instructions were on the medicine and the doctors would not
14:23:59  6   prescribe it without the users complying.  So it's true that
14:24:04  7   an agreement in that case was not required, but there was
14:24:07  8   certainly a lot of direction and control in the record by
14:24:10  9   those doctors forcing the users to perform in a certain way
14:24:15 10   and withholding the medicine if they did not comply with
14:24:19 11   those directions.
14:24:22 12              Unless Your Honor has any questions.
14:24:23 13              THE COURT:  No.  Thank you.
14:24:24 14              MR. DOWNING:  Thank you.
14:24:27 15              THE COURT:  I don't need to hear anymore,
14:24:30 16   Mr. Yorio.
14:24:32 17              MR. YORIO:  Thank you, Your Honor.
14:24:32 18              THE COURT:  Thank you for the arguments.  I'm
14:24:34 19   going to deny the motion.  As I stated in my prior ruling as
14:24:37 20   to joint infringement, the Federal Circuit has made clear
14:24:40 21   allegations of joint infringement must satisfy the pleading
14:24:45 22   standard of Iqbal and Twombly.  Here I think that there are
14:24:47 23   plausible allegations in the second amended complaint that
14:24:50 24   LG conditions participation in the spellcheck activity or
14:24:54 25   receives the benefit of spellcheck upon performance of the
```

```
14:24:57  1    steps of the patented method and establishes the manner or
14:25:01  2    timing of that which is required in Akamai.  So with that,
14:25:07  3    I'm going to deny the motion.
14:25:08  4               Is there anything else you need to deal with.
14:25:11  5               MR. YORIO:  Nothing, Your Honor.
14:25:14  6               THE COURT:  Anything?
14:25:15  7               MR. DOWNING:  No, Your Honor.
14:25:15  8               THE COURT:  Thank you very much.
14:25:17  9               MR. YORIO:  Thank you, Your Honor.
         10               (Court adjourned at 2:45 p.m.)
         11
         12               I hereby certify the foregoing is a true and
               accurate transcript from my stenographic notes in the proceeding.
         13
         14                         /s/ Dale C. Hawkins
                                   Official Court Reporter
         15                          U.S. District Court
         16
         17
         18
         19
         20
         21
         22
         23
         24
         25
```